## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | | |
|---|---|---|
| Preferred Home Inspections, Inc., and<br>Charles E. Strickland, Jr.,<br><br>       Plaintiffs,<br><br>vs.<br><br>Bellsouth Telecommunications, LLC b/d/a<br>AT&T Southeast or d/b/a AT&T South<br>Carolina and Cellco Partnership d/b/a<br>Verizon Wireless,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.: 3:14-cv-00673-MBS<br><br>**ORDER AND OPINION** |

Plaintiff Charles Strickland, Jr., ("Strickland") is the owner and operator of Plaintiff Preferred Home Inspections, Inc., a South Carolina corporation. ECF No. 5 at 3, ¶¶ 6-7. Plaintiffs filed this action for damages, alleging various state law claims against Defendants Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless") and Bellsouth Telecommunications, LLC d/b/a AT&T Southeast or d/b/a AT&T South Carolina ("AT&T"). *See* ECF No. 5. Plaintiffs filed an amended complaint on March 16, 2014. ECF No. 5.

This matter is before the court on Verizon Wireless's motion to compel arbitration, ECF No. 11, and AT&T's motion to dismiss. ECF No. 18. Plaintiffs oppose both motions. *See* ECF Nos. 17, 23. In addition, Verizon Wireless has moved to strike a Declaration of Charles Strickland. *See* ECF No. 22 (Aff. in Opp'n to Mot.), 25 (Mot. to Strike).

## I. FACTS

Strickland alleges that he had a business line with AT&T, but in November 2011 he decided to switch service providers to Verizon Wireless. ECF No. 5 at 3, ¶¶ 8-10. As part of

1

switching providers, Strickland asked AT&T to "port" his telephone number to Verizon Wireless. ECF No. 5 at 5, ¶¶ 10-12. Telephone number portability is a wireless consumer's ability to change service providers within the same local area and still keep the same phone number.[1]

Strickland allegedly encountered problems with the porting process, specifically the following:

- The business line was not disconnected from AT&T's remote call forwarding service and calls were being sent to an AT&T automated message that said the line was disconnected and no longer in service. ECF No. 5 at 3-4, ¶ 13.
- After a period of time calls began to be forwarded to "a complete stranger" who had Strickland's old cell phone number. ECF No. 5 at 4, ¶ 16.
- In February 2012, calls to the business line were once again being forwarded to an AT&T automated message stating the line had been disconnected and was not in service. ECF No. 5 at 5, ¶ 21.
- Around May 2012, callers to the business line were played an automated message from AT&T directory assistance that offered to connect callers to a similar business in the area because the number dialed was not in service. The message then provided the caller with three similar businesses that "were Preferred Home Inspection's direct competitors." ECF No. 5 at 7, ¶¶ 31-32.

In the period of time after changing his service provider, Strickland alleges he called AT&T and Verizon Wireless on numerous occasions to attempt to address the problems. *See* ECF No. 5 at ¶¶ 14 (AT&T), 17 (AT&T), 19 (AT&T), 22 (AT&T), 24 (AT&T), 26 (AT&T), 28 (Verizon Wireless), 30 (AT&T and Verizon Wireless). AT&T allegedly told Strickland on multiple occasions that it would correct the problem on multiple occasions and then, after failing to do so, told Strickland that the problem was with Verizon Wireless. ECF No. 5 at ¶¶ 14, 17, 19, 20, 22 (AT&T employees saying they would fix the problem); ¶¶ 27, 30 (AT&T employees

---

[1] For a helpful resource on porting, see FCC, *Wireless Local Number Portability Guide*, http://www.fcc.gov/encyclopedia/wireless-local-number-portability-wln (last visited Sept. 8, 2014).

saying the problem is with Verizon Wireless).  Plaintiff alleges that the situation has yet to be resolved and that each company blames the other for the problem.  ECF No. 5 at 8, ¶¶ 34, 37.

When Strickland switched service providers to Verizon Wireless, he signed a receipt which included a provision obligating the parties to settle their disputes via arbitration and which also indicated Strickland's acceptance of the current Verizon Wireless Customer Agreement. *See* ECF No. 11-3 at 3 (receipt containing an arbitration clause and indicating Strickland's agreement to the Customer Agreement).  The long-form Customer Agreement also contained provision for the settlement of disputes between the parties by arbitration.  ECF No. 11-4 at 8-10.

## I.VERIZON WIRELESS' MOTION TO COMPEL ARBITRATION

Verizon Wireless brings this motion pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–9 (2012). The FAA provides that:

> [a] written provision in . . . a contract evidencing a transaction
> involving commerce to settle by arbitration a controversy
> thereafter arising out of such contract . . . shall be valid,
> irrevocable, and enforceable, save upon such grounds as exist in
> law or in equity for the revocation of any contract.

9 U.S.C. § 2.  The FAA stands as "a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). Its "'primary' purpose . . . is to ensure that private agreements to arbitrate are enforced according to their terms." *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (internal quotations and citations omitted).  In interpreting arbitration agreements, the courts must resolve any doubts concerning the scope of arbitrable issues in favor of arbitration. *Moses H. Cone*, 460 U.S. at 24-25.

3

To compel arbitration, Verizon Wireless must demonstrate: 1) the existence of a dispute between the parties; 2) a written agreement that includes an arbitration provision that purports to cover the dispute; 3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and 4) the failure, neglect, or refusal of Plaintiffs to arbitrate the dispute. *See Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002). "To decide whether an arbitration agreement encompasses a dispute[,] a court must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause, regardless of the legal label assigned to the claim." *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 319 (4th Cir. 1988).

There is no question here that there is a dispute between the parties, as evidenced by the Complaint.  Further, there is no question that Plaintiffs refuse to arbitrate the dispute.  The first and fourth factors are satisfied.  As to the third factor, it is well settled that telephones, including cellular telephones, are instrumentalities of interstate commerce.  *See United States v. Mandel*, 647 F.3d 710, 716 (7th Cir. 2011); *United States v. Evans*, 476 F.3d 1176 (11th Cir. 2007); *United States v.* Giordano, 442 F.3d 30, 39-40 (2d Cir. 2006); *United States v. Marek*, 238 F.3d 310 (5th Cir. 2001); *United States v. Gilbert*, 181 F.3d 152 (1st Cir. 1999); *United States v. Weathers*, 169 F.3d 336 (6th Cir. 1999); *United States v. Clayton*, 108 F.3d 1114 (9th Cir. 1997); *Kerbs v. Fall River Indus.,* 502 F.2d 731, 738 (10th Cir. 1974) *abrogated on other grounds by Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994).

Plaintiffs do not dispute the presence of these three factors in their response to Verizon Wireless' motion to compel arbitration.  *See* ECF No. 17-1.  Plaintiffs do, however, argue that "[t]he facts giving rise to this action occurred outside the terms and conditions contained in the customer agreement," ECF No. 17-1 at 8, and, therefore, that this dispute is beyond the scope of

4

the arbitration clause.  Plaintiffs also argue that the customer agreement is unenforceable as to

Preferred Home Inspections as it did not sign the agreement.  Further, Plaintiffs contend that "the

arbitration clause is unenforceable because it is part of an adhesion contact [sic] and

unconscionable under South Carolina law."  ECF No. 17-1 at 9.  Each of these arguments is

considered below.

### A. Is this dispute within the scope of the arbitration agreement?

There are two "Customer Agreements" relevant to this action.[2]  The first is the Customer

Agreement dated November 17, 2011, signed by Strickland.  ECF No. 11-3 at 2-3.  The second

is the Customer Agreement dated November 29, 2011.  ECF No. 17-2 at 2.  Each Agreement, in

its original format, provided:

> I AGREE TO THE CURRENT VERIZON WIRELESS
> CUSTOMER AGREEMENT, INCLUDING THE CALLING
> PLAN, (WITH EXTENDED LIMITED WARRANTY/ SERVICE
> CONTRACT, IF APPLICABLE), AND OTHER TERMS AND
> CONDITIONS FOR SERVICES AND SELECTED FEATURES I
> HAVE AGREED TO PURCHASE AS REFLECTED ON THE
> RECEIPT AND WHICH HAVE BEEN PRESENTED TO ME BY
> THE SALES REPRESENTATIVE AND WHICH I HAD THE
> OPPORTUNITY TO REVIEW. I UNDERSTAND THAT I AM
> AGREEING TO AN EARLY TERMINATION FEE PER LINE
> AS REFLECTED ON THIS RECEIPT, LIMITATIONS OF
> LIABILITY FOR SERVICE AND EQUIPMENT, SETTLEMENT
> OF DISPUTES BY ARBITRATION AND OTHER MEANS
> INSTEAD OF JURY TRIALS, AND OTHER IMPORTANT
> TERMS IN THE CUSTOMER AGREEMENT.

---

[2] There is a dispute as to when the port order that is the subject of this action was placed.  Verizon
Wireless submitted documentation that the port order was placed on November 17, 2011, and confirmed
or became effective on November 29, 2011.  ECF Nos. 11-1 at 2, 3; 11-2 at 3, 4; 11-5 at 2-3; 11-8 at 2;
20-2 at 2.  Plaintiffs dispute this and claim that "the issue of porting the number was not discussed in any
fashion on the Customer Agreement/Receipt issued November 17, 2011."  ECF No. 22-1 at 2
(Declaration of Plaintiffs) (subject to the motion to strike by Verizon Wireless considered in this order).
Furthermore, Plaintiffs claim they "called Verizon to effectuate the change on November 29, 2011."  ECF
No. 22-1 at 2.  Plaintiffs' response also states that the port order was placed on November 29, 2011.  *See*
ECF No. 17-1 at 3.

ECF No. 11-3 at 3. Strickland signed the page beneath the referenced language on the November 17, 2011, Agreement. *Id.* However, his signature is not on the November 29, 2011, Agreement. ECF No. 17-2 at 2.

Not only does the arbitration agreement appear on the receipt within a paragraph of a term related to porting, but porting is also mentioned in the Verizon Wireless Customer Agreement current at the time Strickland signed the receipt. ECF No. 11-4 at 2-3. The long-form Customer Agreement also contains more detailed arbitration provisions (in their original formatting):

> **YOU AND VERIZON WIRELESS BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT. THERE'S NO JUDGE OR JURY IN ARBITRATION, AND THE PROCEDURES MAY BE DIFFERENT, BUT AN ARBITRATOR CAN AWARD THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN THIS AGREEMENT, AS A COURT WOULD. IF THE LAW ALLOWS FOR AN AWARD OF ATTORNEYS' FEES, AN ARBITRATOR CAN AWARD THEM TOO. WE ALSO BOTH AGREE THAT:**
>
> > (1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR SMALL CLAIMS COURT CASES THAT QUALIFY, ANY DISPUTE THAT RESULTS FROM THIS AGREEMENT OR FROM THE SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY PRODUCTS OR SERVICES) WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR BETTER BUSINESS BUREAU ("BBB"). . . .

ECF No. 11-4 at 8-9.

Similar arbitration provisions to that contained in both the agreement on the receipt and the long-form Customer Agreement have been characterized as "broad arbitration clauses capable of expansive reach." *Penzoil Exploration & Prod. Co. v. Ramco Energy, Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S.

6

395, 397-98 (1967)).  Broad arbitration clauses are not limited to claims that literally arise under the contract but rather embrace all disputes between the parties having a significant relationship to the contract, regardless of the label attached or the dispute. *Id.*; *see also Rhodall v. Verizon Wireless,* No. 1:20-cv-3195, 2011 WL 4036418 at *4 (D.S.C. Sept. 9, 2011).

The claims against Verizon Wireless in this case constitute a "dispute that results from" the Agreement and was contemplated by the parties.  *See, e.g.* ECF No. 11-4 at 9 (applying the arbitration clause to "any dispute that results from this Agreement or from the services [the customer] receive[s] from us . . . .).  Here, Strickland's dispute with Verizon Wireless arises out of Verizon Wireless' alleged failure to complete the port effectively and thus provide the services Strickland alleges he was entitled to under the contract.  Therefore, Plaintiffs' claims against Verizon Wireless fall within the scope of the arbitration agreement.

**B. Is the arbitration agreement enforceable against Preferred Home?**

Plaintiffs argue that the customer agreement is unenforceable as to Preferred Home Inspections as it did not sign the agreement. ECF No. 17 at 19.

With regard to acceptance, the "My Verizon Wireless Customer Agreement" provides:[3]

> You accept this agreement by:
>
> - Agreeing in writing, by email, over the phone, or in person;
> - Opening a package that says you are accepting by opening it; or
> - Activating your Service.
>
> When you accept, you're representing that you are at least 18 years old and are legally able to accept an agreement. If you're accepting for an organization, you're representing that you are authorized to

---

[3] This was incorporated in the November 17, 2011, Agreement.  ECF No. 11-4.  The November 17, 2011, Agreement applies to Plaintiff Strickland's phone number ending in 4267 to which the business line relevant to this dispute was ported.  ECF No. 11-2 at 3; ECF No. 11-8 at 2.

> bind that organization, and where the context requires, 'you'
> means the organization.

ECF No. 11-4 at 2. As the owner/operator of Preferred, when Strickland contracted with

Verizon Wireless for phone service on Preferred's business line for the benefit of Preferred, he

was acting on behalf of the corporation as its agent. Therefore, according to the terms of the

acceptance in the context of a port of a business phone line, Strickland accepted the Customer

Agreement "for" Preferred Home Inspections. *See* ECF No. 11-4 at 2.

Even if Strickland's signature does not bind Preferred Home Inspections, the doctrine of

equitable estoppel applies. ECF No. 11-2 at 6-7. "In the arbitration context, the doctrine [of

equitable estoppel] recognizes that a party may be estopped from asserting that the lack of his

signature on a written contract precludes enforcement of the contract's arbitration clause when he

has consistently maintained that other provisions of the same contract should be enforced to

benefit him." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411,

418 (4th Cir. 2000). A nonsignatory is estopped from refusing to comply with an arbitration

clause when it receives a direct benefit from a contract containing an arbitration clause. *Id.*

(internal quotations and citation omitted). As in *International Paper Co.*, Plaintiffs in this action

are seeking to enforce contractual rights and yet avoid the contract's requirement that "any

dispute resulting from" the contract be arbitrated. Therefore, Preferred Home is estopped from

refusing to arbitrate its dispute with Verizon on the grounds that it did not sign the contract.

### C. Is the arbitration clause unconscionable?

Plaintiffs also argue that the arbitration clause is "part of an adhesion contact [sic] and

unconscionable under South Carolina law." ECF No. 17-1 at 9.[4] Whether or not an enforceable

---

[4] Defendant Verizon does not contest that the contract is an adhesion contract. *See* ECF No. 20
at 7-8. However, as Verizon points out, an adhesion contract is not per se unconscionable and is
only a beginning point for unconscionability analysis. *See Simpson v. MSA of Myrtle Beach, Inc.*,

arbitration agreement exists is a matter of contract interpretation governed by state law. *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 699 (4th Cir. 2012). In South Carolina, unconscionability is "the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Simpson v. MSA of Myrtle Beach, Inc.*, 644 S.E.2d 663, 668 (S.C. 2007). A court must enforce even grossly unreasonable terms in a contract "unless the circumstances surrounding its formation present such an extreme inequality of bargaining power, together with factors such as lack of basic reading ability and the drafter's evident intent to obscure the term, that the party against whom enforcement is sought cannot be said to have consented to the contract." *Gladden v. Boykin*, 739 S.E.2d 882, 884-85 (S.C. 2013). Finally, when analyzing whether an arbitration agreement is unconscionable, the South Carolina Supreme Court recognized that "the Fourth Circuit has instructed courts to focus generally on whether the arbitration clause is geared towards achieving an unbiased decision by a neutral decision-maker." *Simpson*, 644 S.E.2d at 668-69 (citing *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999)).

Plaintiffs cannot demonstrate that the terms were "so oppressive that no reasonable person would make them." *Simpson*, 644 S.E.2d at 668. First, in both the receipt signed by Strickland and the long-form Customer Agreement it incorporated the arbitration clause is conspicuous, negating any inference that Verizon Wireless sought to "obscure the term." *See Gladden*, 739 S.E.2d at 884-85. In the receipt, the provision appears in all capital letters right above Strickland's signature. ECF No. 11-3 at 3. In the long-form Customer Agreement, the provision appears in all capitals, in bold type-face and set off from the rest of the text by a

---

644 S.E.2d 663, 669 (S.C. 2007).

border.  ECF No. 11-4 at 8-10.  Second, Strickland owned and operated a business for over twenty-five years at the time he entered into the November 17, 2011 Customer Agreement with Verizon Wireless.  ECF No. 5 at 3.  Strickland, therefore, possesses a degree of commercial sophistication making it difficult for this court to find the "extreme inequality of bargaining power" necessary to hold the contract unenforceable as unconscionable.  *See Gladden*, 739 S.E.2d at 884-85.  Third, the arbitration clause binds both parties and provides for a neutral arbitrator, indicating that the clause's function is the resolution of disputes by an unbiased decision-maker.  ECF No. 11-4 at 8-9; *see Simpson*, 644 S.E.2d at 668-69.  Given the high standard for unconscionability, the FAA's preference for arbitration, and the facts of this case, the arbitration clause is not unconscionable and is, therefore, enforceable.

For the reasons stated, Verizon Wireless' motion to dismiss to compel arbitration (ECF No. 11) is granted. Verizon Wireless' motion to strike the Declaration of Charles E. Strickland (ECF No. 25) is denied as moot.

## IV. AT&T'S MOTION TO DISMISS

AT&T moves under Fed. R. Civ. P. 12(b)(6) to dismiss for failure to state a claim.  ECF No. 18.  A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support her claim and would entitle her to relief. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  "To survive a Rule 12(b)(6) motion to dismiss, a complaint must 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 570 (2007)).  Complaints that merely offer "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive. *Twombly*, 550 U.S. at 555.

"Facts that are 'merely consistent with' liability do not establish a plausible claim to relief." *U.S. ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Ashcroft*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. "In addition, although [the court] must view the facts alleged in the light most favorable to the plaintiff, [the court] will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments.'" *Nathan*, 707 F.3d at 455 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)). The court must treat factual allegations of the nonmoving party as true. *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 217-18 (4th Cir. 1994).

In their Amended Complaint, Plaintiffs allege five causes of action against AT&T: 1) interference with prospective contractual relations, 2) conversion, 3) fraud or misrepresentation, 4) negligence, and 5) violation of the UTPA.  ECF No. 5.  The court considers each in turn.

**A.  Interference with Prospective Contractual Relations Cause of Action**

In order to recover on a cause of action for intentional interference with prospective contractual relations, "the plaintiff must prove: (1) the defendant intentionally interfered with the plaintiff's potential contractual relations; (2) for an improper purpose or by improper methods; (3) causing injury to the plaintiff." *Crandall Corp. v. Navistar Int'l Transp. Corp.*, 395 S.E.2d 179, 180 (S.C. 1990); *see also BCD LLC v. BMW Mfg. Co., LLC*, 360 F. App'x 428, 436 (4th Cir. 2010) (citing *Egrets Pointe Townhouses Prop. Owners Ass'n, Inc. v. Fairfield Cmts., Inc.*, 870 F. Supp. 110, 115 (D.S.C. 1994)).

With regard to the first element—a prospective contractual relation—"the plaintiff must demonstrate that he had a truly prospective or potential contract with a third party; that the

11

agreement was a close certainty; and that the contract was not speculative." *Santoro v. Schulthess*, 681 S.E.2d 897, 904 (S.C. Ct. App. 2009). "Methods of interference considered improper are those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules. . . . Methods also may be improper because they violate an established standard of a trade or profession, or involve unethical conduct." *King v. Island Club Apartments*, No. 2005-UP-107, 2005 WL 7083456, at *4 (S.C. Ct. App. Feb. 10, 2005) (unpublished opinion) (quoting *Love v. Gamble*, 448 S.E.2d 876, 882-83 (S.C. Ct. App. 1994)).

Plaintiffs fail to meet the first element required in an intentional interference with prospective contractual relations cause of action because they fail to allege a prospective contract that did not occur due to AT&T's interference. Plaintiffs allege only that their clients and customers complained that they were unable to reach Strickland on his business line and expressed frustration when the problem continued to occur. *See* ECF 5 at 3-9. This does not allege a prospective contract for a specific client or customer that was lost due to inability to reach Strickland on his business line. In addition, Plaintiffs allege in general terms that "AT&T's message was essentially driving Preferred Home Inspections' and Strickland's business away to AT&T's own customers" (ECF No. 5 at 7, ¶ 33) without alleging one customer that was driven away. Even accepting all facts stated as true in Plaintiffs' Amended Complaint, Plaintiffs would not be able to prevail in their intentional interference with prospective contractual relations because Plaintiffs fail to allege a non-speculative agreement that was a close certainty.

Further, Plaintiffs do not allege the second element of the claim—improper purpose or method—with sufficient particularity to satisfy *Twombly*. *See* 550 U.S. at 555. Plaintiffs simply state that "Defendant AT&T's retention and control over the Plaintiffs' business line was done

either for an improper purpose and/or by an improper method." ECF No. 5 at 9.[5]  This language

is precisely the type of "formulaic recitation" of an element of a cause of action prohibited by

*Twombly*.  *See* 550 U.S. at 555.

       Plaintiffs fail to state a cause of action against AT&T for intentional interference with

prospective contractual relations.

## B.  Conversion Cause of Action

       Plaintiffs allege that AT&T converted the telephone number when they failed to port it

properly.  "An action for conversion ordinarily lies only for personal property that is tangible, *or

to intangible property that is merged in, or identified with, some document.*" *Gignilliat v.

Gignilliat, Savitz & Bettis, L.L.P.*, 684 S.E.2d 756, 763 (S.C. 2009) (quoting 18 Am. Jur. 2d

*Conversion* § 7 (2004)) (emphasis in the original)); *see also* Restatement (Second) of Torts §

242, *Conversion of Documents and Intangible Rights* (1965) (providing a non-exhaustive list of

documents subject to conversion).  The Supreme Court of South Carolina is "reluctant to expand

the tort of conversion as it relates to intangible property" and has concluded that actions for

conversion "should be limited to intangible property rights that are identified with some

document." *Gignilliat*, 684 S.E.2d at 763.[6]  Given the South Carolina Supreme Court's expressed

---

[5] In Plaintiffs' response to AT&T's motion to dismiss, Plaintiffs argue that they plead specific
facts (namely instances where Strickland called AT&T to have the problem fixed and was told,
allegedly falsely, that it would be) which, if true, amount to a violation of a federal statute, §
251(b)(2) of the Telecommunications Act of 1996.  ECF No. 23-1 at 13-15; *see* 47 U.S.C. §
251(b)(2) (requiring telephone companies to provide number portability); *see also* 47 C.F.R. §§
52.20-52.36 (FCC regulations governing number portability).  However, Plaintiffs raise
violations of this statute and these regulations for the first time only in their briefing and do not
allege violations of these statutes (and thereby the use of improper methods) in their complaint.
[6] Neither the South Carolina Supreme Court nor the Fourth Circuit has ruled on the issue of
whether a telephone number is property.  However, the Fifth and First Circuits found that
telephone numbers may constitute a unique property interest. *See, e.g., Matter of Sec. Inv.
Properties, Inc.,* 559 F.2d 1321, 1324, 1324 n.1 (5th Cir. 1977); *Darman v. Metro. Alarm Corp.,*
528 F.2d 908, 911 (1st Cir. 1976). The Second, Third, Seventh, and Ninth Circuits, however,
have held that subscribers have no property or possessory interest in telephone numbers. *See,*

13

reluctance to expand the tort of conversion to intangible property not attached to a document and a telephone number's status as intangible property, the court concludes a telephone number is not subject to conversion. Therefore, even accepting as true Plaintiffs' allegations, they have failed to meet the first element required for the cause of action.

## C.  Fraud Cause of Action

Plaintiffs' third cause of action is subject to Fed. R. Civ. P. 9(b), which requires fraud to be plead with particularity. "The circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013) (internal quotations and citation omitted); *see also* S.C. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").

"To prove fraud under South Carolina law, the plaintiff must prove by clear, cogent and convincing evidence each of nine elements: (1) representation; (2) its falsity; (3) its materiality; (4) either the speaker's knowledge of its falsity or reckless disregard of its truth or falsity; (5) the speaker's intent that representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury." *Toney v. LaSalle Bank Nat'l Ass'n*, 896 F. Supp. 2d 455 (D.S.C. 2012), *aff'd*, 512 F. App'x 363 (4th Cir. 2013); *see also Regions Bank v. Schmauch*, 582 S.E.2d 432, 444-45 (S.C. Ct. App. 2003). "A mere showing that a party has failed to keep his promises 'is not sufficient to demonstrate actionable fraud.'" *Tom Hughes Marine, Inc. v. Am.*

---

*e.g., Bus. Edge Grp., Inc. v. Champion Mortgage Co., Inc.,* 519 F.3d 150, 154 (3d Cir. 2008); *In re StarNet. Inc.,* 355 F.3d 634, 637 (7th Cir. 2004) ("No one has a property interest in a phone number."); *In re Best Re–Mfg. Co.,* 453 F.2d 848, 850 (9th Cir.1971); *Slenderella Sys. of Berkeley, Inc. v. Pac. Tel. & Tel. Co.,* 286 F.2d 488, 490 (2d Cir. 1961).

*Honda Motor Co., Inc.*, 219 F.3d 321, 324 (4th Cir. 2000) (quoting *Woodward v. Todd*, 240 S.E.2d 641, 643 (S.C. 1978)). "Under the elements for both fraud and negligent misrepresentation, the representation at issue must be false." *Turner v. Milliman*, 708 S.E.2d 766, 769 (S.C. 2011); *see also Fields v. Melrose Ltd. P'ship,* 439 S.E.2d 283, 285 (S.C. Ct. App. 1993) ("To be actionable, the representation must relate to a present or pre-existing fact and be false when made.").

The Amended Complaint is subject to two opposed interpretations by the parties regarding the fraud allegation. AT&T argues that Plaintiffs allege only promises of future action (i.e. AT&T said the problem "would be corrected," ECF No. 5 at 10, ¶ 56) and such promises do not constitute misrepresentations of fact. Plaintiffs respond that the misrepresentations made were that Defendant told Plaintiffs "the problems with his phone line were with Verizon – not AT&T" and that this second statement was a promise of an existing fact. *See* ECF No. 5 at 4, ¶ 14. Both statements are considered below.

  1. *Statement 1: AT&T told Plaintiffs that "the problem with their business line would be corrected."*

AT&T concedes that a future promise may be fraudulent under certain conditions. "A future promise is not fraudulent unless such promise was part of a general design or plan, existing at the time, to induce a party to enter into a contract or act as he or she otherwise would not have acted, to his or her injury." *Turner*, 708 S.E.2d at 770 (citing *Bishop Logging Co. v. John Deere Indus. Equip. Co.,* 455 S.E.2d 183, 187 (S.C. Ct. App. 1995)). Plaintiffs make no allegation in their complaint that AT&T's action towards Strickland was part of any "general design or plan" to induce Strickland to act as he otherwise would not have acted. *See Turner*, 708 S.E.2d at 770. Therefore, Plaintiffs fail to allege the necessary facts to make out a plausible claim against AT&T for making a fraudulent promise of future action

15

    *2. Statement 2: AT&T told Plaintiffs that "the problems with his phone line were with Verizon – not AT&T."*

Plaintiffs, however, contend that the fraudulent statement is one of present fact: that the problem with porting was with Verizon, not AT&T.  Plaintiffs fail to make allegations in their complaint with regard to the falsity of this statement or with regard to Plaintiffs' reliance on the statement.  Therefore, even if the complaint is read as alleging this statement as the basis of the claim for fraud, the complaint fails to allege with particularity facts supporting the remaining elements.

Plaintiffs have failed to allege sufficient facts to plausibly state entitlement to relief as to their fraud cause of action.

**D.  Negligence Cause of Action**

Plaintiffs next allege a negligence cause of action against AT&T. "In a negligence action, a plaintiff must show that (1) the defendant owes a duty of care to the plaintiff, (2) the defendant breached the duty by a negligent act or omission, (3) the defendant's breach was the actual and proximate cause of the plaintiff's injury, and (4) the plaintiff suffered an injury or damages." *Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 638 S.E.2d 650, 656 (S.C. 2006) (citing *Steinke v. S.C. Dep't of Labor, Licensing, and Regulation*, 520 S.E.2d 142, 149 (S.C. 1999)). "[N]egligence is the failure to use due care," which is "that degree of care which a person of ordinary prudence and reason would exercise under the same circumstances." *Berberich v. Jack*, 709 S.E.2d 607, 612 (S.C. 2011) (internal quotations and citations omitted). With regard to the role of statutes in imposing a duty, the South Carolina Supreme Court has explained:

> Negligence is the breach of a legal duty, and it is immaterial whether the duty is one imposed by the rule of the common law requiring the exercise of ordinary care not to injure another, or is imposed by a statute designed for the protection of others. In either

> case, the failure to perform the duty constitutes negligence, and
> renders the party liable for injuries resulting therefrom. All that the
> statute does is to establish a fixed standard by which the fact of
> negligence may be determined.

*Bell v. Atl. Coast Line R. Co.*, 24 S.E.2d 177, 186 (S.C. 1943).  "The existence of a duty owed is

a question of law for the courts."  *Doe v. Greenville Cnty. Sch. Dist.*, 651 S.E.2d 305, 309 (S.C.

2007).

AT&T argues Plaintiffs fail to allege a legally cognizable duty.  ECF No. 18-1 at 12.

Plaintiffs respond that AT&T had a statutory duty under the Telecommunications Act of 1996,

47 U.S.C. § 251(b)(2) (2012), and the subsequent regulations imposed by the Federal

Communications Commission (FCC), 47 C.F.R. §§ 52.20-52.36.[7] ECF No. 23-1 at 22-23. This

specific theory of duty appears for the first time in Plaintiffs' response.

In relevant part, 47 U.S.C. § 251 provides: "Each local exchange carrier has the

following duties: . . . The duty to provide, to the extent technically feasible, number portability in

accordance with requirements prescribed by the Commission. . . ."  47 U.S.C. § 251(b)(2).  The

Act defines number portability as "the ability of users of telecommunications services to retain,

at the same location, existing telecommunications numbers without impairment of quality,

reliability, or convenience when switching from one telecommunications carrier to another."  47

---

[7] The relevant requirements prescribed by the FCC are as follows:
(a) Subject to paragraphs (b) and (c) of this section, all local exchange carriers (LECs) must
provide number portability in compliance with the following performance criteria:
> (1) Supports network services, features, and capabilities existing at the time number
> portability is implemented, including but not limited to emergency services, CLASS
> features, operator and directory assistance services, and intercept capabilities;
> (2) Efficiently uses numbering resources;
> (3) Does not require end users to change their telecommunications numbers;
> (4) Does not result in unreasonable degradation in service quality or network reliability
> when implemented;
> (5) Does not result in any degradation in service quality or network reliability when
> customers switch carriers;
> (6) Does not result in a carrier having a proprietary interest . . . .
47 C.F.R. § 52.23(a)(1)-(6).

U.S.C. § 153(37).  The Telecommunications Act also provides for civil liability for those injured by violations of the act and allows suit by "[a]ny person claiming to be damaged by any common carrier subject to the provisions of this chapter" in federal district court.  47 U.S.C. §§ 206-07.

In the Amended Complaint, Plaintiffs allege that "Defendants had a duty of care to properly transfer and ensure the proper transfer of Plaintiffs' business line number from Defendant AT&T to Defendant Verizon Wireless when Plaintiffs requested the port order transfer and Verizon Wireless sent the port order request to AT&T." ECF No. 5 at 11, ¶ 67. AT&T is correct that Plaintiffs do not provide the statutory basis for the duty in their Amended Complaint; however, they do allege in substantially similar terms the particular duty that is created by the statute—the duty to provide number portability without "impairment of quality, reliability, or convenience." 47 U.S.C. § 153(37).

Therefore, although Plaintiffs do not in their complaint cite a specific statute, they do allege the existence of the duty contained in the Telecommunications Act.[8]  AT&T's motion to dismiss the negligence cause of action for failure to identify a legally cognizable duty is, therefore, denied.[9]

---

[8] AT&T also makes multiple references to the fact that at the time of Strickland's complaints to it about porting issues, AT&T was his *former* service provider. AT&T contends that, therefore, it cannot owe him a duty. However, the purpose of the Telecommunications Act was to allow easier market entry by making it each local exchange carrier's obligation to share its network with competitors which, in turn, allows consumers to be able to switch providers and retain their phone numbers. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 549 (2007). It is irrelevant that Defendant was not Plaintiff Strickland's provider at the time because the duty was to ensure the number was ported (within the constraints of what is technically feasible) to the new service provider in order to fulfill a purpose of the Telecommunications Act of 1996.

[9] AT&T also argues that the "broad allegations of injury set forth in the Complaint are sweeping generalizations and are not factually sufficient to be attributable to AT&T."  ECF No. 18-1 at 14. The court cannot agree.  In fact, the complaint alleges many actions by AT&T (*see supra* p. 2) which may have caused Plaintiffs' injury.

**E.  South Carolina Unfair Trade Practices Act ("UTPA") Cause of Action**

The UTPA states: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." S.C. Code Ann. § 39-5-20(a) (1976).  To succeed in a claim under the UTPA, the plaintiff must show three elements: "(1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected [the] public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)." *Health and Promotion Specialists, L.L.C. v. S.C. Bd. of Dentistry*, 743 S.E.2d 808, 816 (S.C. 2013) (internal quotations and citations omitted).  "An act is 'unfair' when it is offensive to public policy or when it is immoral, unethical, or oppressive." *Id.* at 816 (quoting *Gentry v. Yonce,* 522 S.E.2d 137, 143 (S.C. 1999)). "An act is 'deceptive' when it has a tendency to deceive."  *Id.*  "To sustain a cause of action under the SCUTPA, the plaintiffs must establish, by specific facts, that members of the public were adversely affected by [the defendant's actions]." *Bessinger v. Food Lion, Inc.,* 305 F. Supp. 2d 574, 584 (D.S.C. 2003).  "An impact on the public interest may be shown if the acts or practices have the potential for repetition." *Wright v. Craft*, 640 S.E.2d 486, 501 (S.C. Ct. App. 2006) (quoting *Singleton v. Stokes Motors, Inc.*, 595 S.E.2d 461, 466 (S.C. 2004)). However, showing that the same kind of action occurred in the past or that the company's procedures create a potential for repetition "are not the only means of showing the potential for repetition or public impact, and each case must be evaluated on its own merits to determine what a plaintiff must show to satisfy the potential for repetition/public impact prong of the UTPA." *Wright v. Craft*, 640 S.E.2d 486, 502 (S.C. Ct. App. 2006).

In this case, Plaintiffs allege that "Strickland discovered through his customers and clients that AT&T had not fixed the problem and AT&T was call forwarding his business line to

a complete stranger" (ECF No. 5 at 4, ¶ 16), "Strickland continued to receive complaints from his customers and clients that they could not get through to him on his business line" (ECF No. 5 at 4, ¶ 19), and "[s]everal of his long standing business customers and clients expressly stated their frustration with not being able to get through to [Plaintiff Strickland] on [Plaintiff Preferred's] business line." ECF No. 5 at 4, ¶ 22. These allegations are of events which show that customers and clients—members of the public—were adversely impacted, in the broadest sense, by AT&T's actions with regard to the port of Plaintiffs' business line.

However, the only adverse impact to the public specifically alleged is "frustration." That type of impact is not severe enough to warrant proceedings against AT&T under the UTPA. *See* S.C. Code Ann. § 39-5-50 (1976) (limiting recovery under the act to persons who suffered "ascertainable loss"). Frustration is not the type of harm contemplated by an act designed to stamp out "immoral, unethical, or oppressive" commercial conduct. *See Health and Promotion Specialists*, 743 S.E.2d at 816. Nor is frustration in keeping the type of harms usually associated with UTPA violations. *See, e.g.*, *Singleton v. Stokes Motors, Inc.*, 595 S.E.2d 461, 467-68 (S.C. 2004) (finding an auto dealer's practice of "yo-yo sales" in which the dealer leads consumer's to believe the sale is final, only to later repossesses the vehicle in an attempt to rewrite the transaction on more favorable terms to be a violation of the UTPA); *Johnson v. Collins Entertainment Co., Inc.*, 564 S.E.2d 653, 639-40 (S.C. 2002) (finding video poker operators to be acting against public interest by repeatedly violating state statutes capping cash payouts); *Barnes v. Jones Chevrolet Co., Inc.*, 358 S.E.2d 156, 613 (S.C. Ct. App. 1987) (finding the padding of bills for auto repair against the public interest and an unfair trade practice). AT&T's motion to dismiss this cause of action is granted because the mere emotional frustration of customers, without more, is insufficient to constitute an adverse effect on the public interest.

20

## IV. CONCLUSION

For the foregoing reasons, Verizon Wireless' motion to dismiss to compel arbitration (ECF No. 11) is **granted**, the motion by Verizon Wireless to strike the declaration of Charles E. Strickland, Jr., (ECF No. 25) is **denied as moot**, and AT&T's motion to dismiss for failure to state a claim (ECF No. 18) is **granted in part, and denied in part.** [10]

**IT IS SO ORDERED.**

s/ Margaret B. Seymour<br>Margaret B. Seymour<br>Senior United States District Judge

Columbia, South Carolina
September 24, 2014

---

[10] On page twelve of their response to AT&T's motion to dismiss, Plaintiffs seem to request leave to amend their complaint, writing "the Plaintiffs respectfully request leave to amend the amended complaint. . . . if an amendment needs to be made to the substantive allegations of the Amended Complaint, the Plaintiffs respectfully request the opportunity to amend them." ECF 23-1 at 12. Plaintiffs have not filed a draft amended complaint and none of the parties has briefed the issue of whether or not amendment would be appropriate at this juncture. Therefore, a motion to amend is not before this court. Plaintiffs are directed to properly file any such motion within fourteen days of the date of this order.